# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **SIGNET MARITIME CORPORATION,** | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:21-cv-65 |
| V. | § § | Admiralty Fed. R. Civ. P. 9(h) |
| **RLB CONTRACTING, INC.,** | § § § | |
| Defendant. | § § | |

## SIGNET MARITIME CORPORATION'S ORIGINAL COMPLAINT

Plaintiff, Signet Maritime Corporation ("Signet") files this Original Complaint against RLB Contracting, Inc. ("RLB"), showing as follows:

### I. JURISDICTION AND VENUE

1.1   This is a cause of action for a maritime tort within the admiralty and maritime jurisdiction of the United States and this Honorable Court in accordance with Section 1333 of Title 28 of the United States Code, and Rule 9(h) of the Federal Rules of Civil Procedure. The general maritime law of the United States is thus invoked, because, as will more fully appear, this is a cause of action for negligence and negligence *per se* and a maritime tort under the general maritime law.

1.2   Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas and within the jurisdiction of this Court.

## II. PARTIES

2.1     Signet is a foreign corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in Houston, Texas.

2.2     RLB is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Texas, with its principal place of business in Port Lavaca, Texas. RLB may be served with process through its registered agent for service, Randy L. Boyd, 346 Bay Meadow Drive, Port Lavaca, Texas 77979.

## III. FACTS

3.1     Signet is the owner and operator of the tug SIGNET VIGILANT.

3.2     RLB is a marine contractor that performs maintenance and dredging activities in canals, channels, bays and waterways in Texas. On or about November 2019, RLB was awarded a maintenance dredging contract from the United States Army Corps of Engineers, Contract #6 – FY20: GIWW – Across San Antonio Bay; GIWW / MSC intersection, Solicitation Number: W912HY-19-B-0025 and Contract Number: W912HY-20-C-001. Pursuant to that contract, RLB performed maintenance dredging along the Gulf Intercoastal Waterway ("GIWW") channel, across San Antonio Bay and along the GIWW covering an extensive area, including the GIWW channel between mile marker 484 and mile marker 486 near Port O'Connor, Texas.

3.3     RLB began performing dredging activities on or about February 2020 by utilizing, placing, controlling, and managing underwater pipes pursuant to the maintenance dredging contract with the Army Corps of Engineers, and RLB continued the dredging

work up to and beyond November 10, 2020 along the GIWW channel, across San Antonio Bay and along the GIWW covering an extensive area, including the GIWW channel between mile marker 484 and mile marker 486 near Port O'Connor, Texas.

3.4     On or around 1950 Central Standard Time on November 10, 2020, the SIGNET VIGILANT was proceeding eastbound pushing an empty barge, the MARMAC 30, in the vicinity of mile marker 485 within the GIWW channel.

3.5     While the SIGNET VIGILANT maneuvered within the GIWW channel to make a port to port passing in a meeting situation with the Tug RIO GRANDE which was pushing two red flag barges westbound within the GIWW channel, and while abreast of the RIO GRANDE, the SIGNET VIGILANT struck a fully submerged, underwater, unlit, and unmarked obstruction to navigation that was located inside the GIWW channel in the vicinity of mile marker 485 in the proximity of coordinates 28° 21.78666' N 096° 34.82918' W.

3.6     At the time of the allision, the SIGNET VIGILANT was utilizing a properly tuned radar which was in all respects in good working order, to scan the waterway for any potential obstructions or hazards to navigation, and the crew of the SIGNET VIGILANT was at all times keeping a dutiful and proper lookout for any potential obstructions or hazards to navigation and keeping a dutiful and proper lookout for any markings, buoys, lights, and warnings of any such hazards, but the underwater, submerged, unmarked and unlit dredge pipe was not visible or apparent notwithstanding these efforts by the SIGNET VIGILANT and her crew.

3.7 The allision with the dredge pipe caused the SIGNET VIGILANT to come to a sudden, and complete stop and rendered the SIGNET VIGILANT immobile while afloat in the GIWW channel. After the allision, the starboard Z-Drive unit on the SIGNET VIGILANT started to leak gear oil into the GIWW with an oil sheen appearing around the stern of the vessel. As a result of the allision, both engines of the SIGNET VIGILANT were shut down, and the captain and the crew of the SIGNET VIGILANT performed damage assessment, damage control and spill containment by deploying a boom. Signet hired an environmental company to clean up the discharge from the leaking Z-Drive.

3.8 Prior to the casualty, neither Signet nor the captain or crew of the SIGNET VIGILANT had any prior notice or knowledge that an underwater, submerged, unmarked and unlit dredge pipe was placed, positioned, or located within the GIWW channel near marker 485 in the proximity of coordinates 28° 21.78666' N 096° 34.82918' W.

3.9 After the casualty, the SIGNET VIGILANT was towed by the tug SIGNET COLUMBIA to Pascagoula, Mississippi to further assess the damage caused by the allision. While sitting on blocks at Signet's shipyard in Pascagoula, Mississippi, Signet discovered substantial and extensive damage to the SIGNET VIGILANT resulting from the allision, including that the lower unit of the starboard Z-Drive was completely sheared off the vessel at the mounting flange, and various components of the Z-Drive were missing, along with extensive damage to the steering and propulsion components, keel, hull, propeller shaft, vertical shaft, tubes, fittings, loss of propeller and other areas and aspects of the SIGNET VIGILANT during the allision.

3.10    Upon undertaking a further assessment of damage to the SIGNET VIGILANT, Signet hired engineers to perform a sonar scan of the area of the allision and utilized divers to locate the Z-Drive, and with assistance from those consultants and the rental of a crane and the use of a transportation service, Signet located the Z-Drive laying against and directly contacting a dredge pipe running along and above the mud bottom surface of the GIWW channel. Signet recovered and removed the Z-Drive from the GIWW channel on November 18, 2020.

3.11.   The obstruction to navigation within the GIWW channel near marker 485 in the proximity of coordinates 28° 21.78666' N 096° 34.82918' W that was the object of the allision was a dredge pipe owned, utilized, placed, maintained and controlled by RLB during dredging activities in the area pursuant to contract with the Army Corps of Engineers.

3.12    Due to the substantial damage sustained by the SIGNET VIGILANT as a result of the allision with RLB's dredge pipe, the SIGNET VIGILANT has been out of service since November 11, 2020, and will remain out of service for an extended period while undergoing repairs.

3.13    At all relevant times leading up to and including the time of the allision, the SIGNET VIGILANT was within the GIWW in the navigable waters of the United States of America and within the jurisdiction of the Southern District of Texas.

## IV. CAUSES OF ACTION

4.1     RLB is liable and accountable for Signet's damages caused by the allision with the dredge pipe, because such damages were proximately caused by the negligent acts

Case 2:21-cv-00065   Document 1   Filed on 04/06/21 in TXSD   Page 6 of 10

and omissions and the negligence *per se* of RLB. On a navigable waterway such as the GIWW, the right to navigation is paramount, and RLB placed, positioned, located, left and abandoned the dredge pipe under the waterway in a manner that interfered with vessels in navigation through the GIWW, including the safe and unobstructed passage of the SIGNET VIGILANT, and such actions and omissions by RLB were in violation of general maritime law and federal statutes pertaining to navigable waterways in the United States.

4.2     *Negligence Per Se*—RLB committed acts and omissions that constitute negligence *per se*, and those acts and omissions caused damages to the SIGNET VIGILANT, in so far as:

(a)     RLB failed to comply with the Inland Navigation Rules, and other Federal Statutes noted below, concerning the duty to timely remove and to timely mark, illuminate and warn of obstructions in the GIWW channel, therefore, RLB is negligent *per se,* and Signet invokes the *Pennsylvania* Rule. *See The Pennsylvania*, 86 U.S. 125 (1873), *see also Gele v. Chevron Oil Co.,* 574 F.2d 243, 247 (5th Cir.)(applying *Pennsylvania* Rule to statutory violator that did not properly mark object in navigable waters). Consequently, RLB bears the burden of showing that the failure to comply with the Federal Statutes and Inland Navigation Rules was not one of the factors or causes that contributed to the allision, a showing which RLB cannot make, because the proximate cause of the allision, and Signet's resulting damages, within all reasonably probability was the size, location, placement, and positioning of the hazardous obstruction to navigation created by RLB, who owned, utilized, placed, controlled and managed the dredge pipe, which RLB allowed to be, become and remain an obstruction to navigation without markings, warnings, or

64716:45346960                                                    6

lights in the GIWW channel near marker 485 in the proximity of coordinates 28° 21.78666' N 096° 34.82918' W.

(b)  In particular, but without limitation, RLB violated 33 USC §§ 403, 403a, and 406, the Rivers and Harbors Act of 1899, as amended, and specifically, 33 CFR §§ 64.03(a)(3) and 64.11, and 49 CFR parts 192 and 195, as applicable ("Federal Statutes"), which require an owner and operator of an obstruction or hazard placed on, in or under navigable waters, including a dredge pipe, that restricts, endangers, or interferes with vessels from navigating waters subject to the jurisdiction of the United States, including the GIWW, to mark the obstruction or hazard with a buoy or beacon during the day and to light the obstruction at night, which RLB failed to do.

(c)  The Federal Statutes RLB violated were designed not only to protect the public's right, including Signet's and the SIGNET VIGILANT's right, to the unobstructed use of navigable waters, but also to prevent allisions and to protect vessels, including the SIGNET VIGILANT, from harm arising from allisions with unlawful obstructions.

4.3  *Negligence*—RLB committed acts and omissions that constitute negligence, which caused Signet damages, by failing to use reasonable care under the circumstances, and by breaching the duty to use ordinary care owed to Signet and the SIGNET VIGILANT, by:

(a)  allowing a dredge pipe to be placed and utilized underwater, and remain fully submerged, within the GIWW channel in a position and in a manner so as to

create a hazard to navigation to vessels, including the SIGNET VIGILANT on November 10, 2020, as a consequence of RLB's dredging operation in the area of the allision;

   (b) failing to timely and properly remove the underwater and fully submerged dredge pipe to eliminate the hazard to navigation to vessels, including the SIGNET VIGILANT on November 10, 2020;

   (c) failing to timely and properly mark the underwater and fully submerged dredge pipe to eliminate the hazard to navigation to vessels, including the SIGNET VIGILANT on November 10, 2020;

   (d) failing to timely and properly light the underwater and fully submerged dredge pipe to eliminate the hazard to navigation to vessels, including the SIGNET VIGILANT on November 10, 2020; and

   (e) failing to timely and properly notify and warn vessels navigating the GIWW channel, including the SIGNET VIGILANT on November 10, 2020, of the presence and location of RLB's underwater and fully submerged dredge pipe that was a hazard to navigation.

  4.4 Each of the foregoing acts and omissions were committed by RLB, either directly or through their servants, agents, representatives or employees, and each of the foregoing acts and omissions constitute negligence and negligence *per se* that proximately caused the allision and Signet's damages. RLB is liable for each of these acts and omissions, either directly or through the doctrine of *respondeat superior*.

  4.5 Signet invokes the doctrine of *res ipsa loquitor* against RLB because the character of the allision was such that it would not have happened in the absence of

negligence by RLB, and the instrumentality causing the occurrence was exclusively within RLB's control. Signet also invokes all applicable presumptions under the maritime law relating to a vessel striking an unmarked submerged object.

## V. DAMAGES

5.1   RLB's negligent and negligent *per se* acts and omissions were a direct and proximate cause of the allision, and of actual, incidental, and consequential damages to Signet. Signet's damages caused by RLB include, but are not limited to, physical damage to the SIGNET VIGILANT, survey/inspection costs, incident response costs and expenses, pollution response costs, labor and ship repair expenses, overhead, replacement costs and expenses, loss of use, business interruption, and loss of profits. At this time, the repair and replacement costs alone will likely exceed $910,733. Consequential and incidental losses will likely exceed $352,463 and the loss of use, business interruption and loss of profits will likely exceed $1,200,346, and these losses continue to increase and will continue to accrue until the SIGNET VIGILANT returns to service.

5.2   At all material times, Signet mitigated its damages in a commercially reasonable manner after the allision.

## VI. CONDITIONS PRECEDENT

6.1   Signet satisfied all necessary conditions precedent prior to bringing this suit.

## VII. PRAYER FOR RELIEF

7.1   WHEREFORE, Signet respectfully prays that summons under due form and law be issued against RLB and that RLB be served with a copy of the summons and this Complaint, that RLB be cited to appear and answer in this cause, that Signet be awarded

judgment over and against RLB for the full amount of its damages, including pre-judgment and post-judgment interest and court costs, and that Signet be awarded all other such relief, in equity, in law, and in admiralty, to which it may show itself to be justly entitled.

        Respectfully submitted,

/s/ *Ronald W. Dennis*
Ronald W. Dennis, Attorney in Charge
Federal ID. No. 33889
Jack C. Partridge, Attorney in Charge
Federal I.D. No. 10470
802 N. Carancahua, Suite 1300
Corpus Christi, Texas 78410
(361) 884-8808
(361) 884-7261 Facsimile
**ATTORNEY FOR PLAINTIFF,
SIGNET MARITIME CORPORATION**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.